IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| **GRADY L. SCOTT,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:04-CV-0256-C |
| | § | ECF |
| | § | Referred to the U.S. Magistrate Judge |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the court upon Plaintiff's complaint filed December 1, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on July 5, 2005 ("Pl. Br."), and Defendant filed her brief on August 1, 2005 ("Def. Br."). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

**I.   STATEMENT OF THE CASE**

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income ("SSI") benefits on October 12, 2001, with a protective filing date of

October 3, 2001, for his SSI application, alleging disability beginning June 1, 2001. Tr. 18, 676-78. Plaintiff's applications were denied initially and upon reconsideration. Tr. 18, 679-82, 687-93. Plaintiff filed a Request for Hearing by Administrative Law Judge on May 23, 2002, and this matter came for hearing before the Administrative Law Judge ("ALJ") on March 31, 2003. Tr. 18, 31-32, 34-64. Plaintiff, represented by an attorney, testified in his own behalf. Tr. 38-58. Plaintiff's former wife, Bonnie Scott, also testified. Tr. 58-62. The ALJ issued a decision unfavorable to Plaintiff on July 9, 2003. Tr. 16-23.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements on June 1, 2001, and that Plaintiff had not engaged in substantial gainful activity at any time since June 1, 2001. Tr. 19. He found that Plaintiff has "severe" impairments, including polycythemia rubra vera, degenerative changes in his lumbar spine, obstructive sleep apnea, a history of bacterial endocarditis, and a bicuspid aortic valve. *Id*. He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*.

The ALJ noted that Plaintiff has complained of fatigue and malaise, which has been significant at times, since April 2001. Tr. 20. He noted that Plaintiff suffered from bacterial endocarditis and a strep viral infection which required inpatient hospital treatment in July 2001, as well as intravenous medication therapy for 36 days after his discharge. Tr. 19. The ALJ noted that Plaintiff was diagnosed with adult onset diabetes milletus in 2001, which was treated with dietary changes. *Id*. He noted that the diagnosis was changed to glucose intolerance. *Id*. Plaintiff was noted to have had very good glucose control. *Id*.

The ALJ noted that Plaintiff has a bicuspid aortic valve, and a July 2001 echocardiogram indicated moderate to severe aortic regurgitation. Tr. 20. He noted that subsequent echocardiograms, including one in December 2002, have indicated mild aortic regurgitation, mild aortic stenosis, and mild left ventricular hypertrophy. *Id*. He noted that Plaintiff may require an aortic valve replacement in the future if his condition deteriorates. *Id*. The ALJ noted that in March 2001, Plaintiff underwent an exercise stress test at which time he achieved 80% of his predicted heart rate and 10 METS, with fair exercise tolerance and no chest pain noted during testing. *Id*. Test results were consistent with a low-grade ischemia with no evidence of myocardial scarring. *Id*.

The ALJ also discussed Plaintiff's mild to moderate obstructive sleep apnea and moderately severe upper airway resistence, which is treated with a CPAP machine. *Id*. He noted the objective results of testing which were consistent with obstructive disease. *Id*.

The ALJ noted that Plaintiff has polycythemia rubra vera, which was controlled with phlebotomies until approximately September 2002. Tr. 19. He noted that Plaintiff underwent treatment with Gleevec, a medication, which reportedly alleviated his night sweats, facial swelling, and headache. Tr. 19-20.

The ALJ also noted Plaintiff's history of low back pain since approximately July 2001. *Id*. An MRI indicated mild degenerative disc disease and a disc bulge at L5-S1 that possibly contacted the S1 nerve roots but did not compress them. *Id*. There was also evidence of a minimal disc bulge and mild stenosis on the left at L4-5. *Id*. The ALJ noted that upon examination, Plaintiff has demonstrated tenderness on the right from L4 to S1, loss of lumbar range of motion, and positive straight leg raising on the right, with no neurological abnormalities or radiculopathy exhibited. *Id*. The ALJ noted that Plaintiff was diagnosed with mechanical back pain and was initially treated

conservatively with physical therapy and medications, and when his pain worsened, he was later treated with branch blocks and a branch neurotomy. Tr. 20-21.

The ALJ found that Plaintiff has objectively identifiable, medically determinable impairments that reasonably could be expected to produce the pain and other subjective complaints that he alleges. Tr. 21. He indicated that he considered the element of pain in assessing Plaintiff's residual functional capacity ("RFC") for work and had evaluated his subjective complaints in accordance with 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p (July 2, 1996)("SSR 96-7p"). *Id*. The ALJ indicated that he had also considered Plaintiff's very good work history and the information and observations provided by his treating physicians and third parties. The ALJ found, however, that Plaintiff's allegations regarding his level of pain, subjective complaints, and functional limitations had "limited credibility" and were not reasonably supported by the findings of the objective medical evidence or the inferences therefrom. *Id*.

The ALJ noted Plaintiff's "very good physical examination" at the time that the orthopedist evaluated his back. Tr. 22. He noted that despite Plaintiff's complaints of significant fatigue and malaise, he was able to exercise on a treadmill for nine minutes. *Id*. He noted that Plaintiff's blood count has done well and his polycythemia rubra vera has been stable and well controlled. *Id*. The AL also noted that the most recent echocardiograms indicated only mild aortic regurgitation and mild aortic stenosis, and that at that time there was no current indication or treatment plan to replace Plaintiff's aortic valve nor was there evidence of significant heart enlargement. *Id*. The ALJ noted that he had considered, but did not accept, the March 2003 opinion of Victor Hirsch, M.D., Plaintiff's treating physician, indicating that Plaintiff was totally disabled for an indefinite period of time. *Id*. The ALJ noted that Dr. Hirsch's opinion was based on the potential consequences of Plaintiff's condition, rather than his actual limitations. *Id*. The ALJ also noted that the medical evidence indicated that Plaintiff was doing well at that time and has remained stable overall despite

his illnesses. *Id*. The ALJ did not accord the opinion of Dr. Hirsch indicating that Plaintiff was totally disabled controlling weight, noting that it was not supported by, or consistent with, the objective evidence. *Id*.

The ALJ noted that the evidence established that Plaintiff continued to have symptoms despite medication and has remained limited since the alleged onset date. *Id*. The ALJ found that Plaintiff retained the RFC to obtain, perform, and maintain a full range of light work. *Id*. He also found that Plaintiff's impairments do not prevent Plaintiff from performing his past relevant work as a store manager, district manager, or salesman as that work is generally performed in the national economy and, therefore, Plaintiff is not disabled. Tr. 23.

Plaintiff requested that the Appeals Council review his case on August 20, 2003. Copies of the hearing tape and file and an extension of time were requested. Tr. 14. The copies were sent and a 25-day extension was granted on June 18, 2004. Tr. 13-14. Plaintiff submitted a brief and additional evidence in support of his request. Tr. 11. The Appeals Council issued its opinion on October 10, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 6-10. The ALJ's decision, therefore, became the final decision of the Commissioner.

On December 1, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir.

2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 4 that Plaintiff was not disabled because he retained the ability to return to his past relevant work as a store manager, district manager, or salesman, as that work is generally performed in the national economy. Tr. 22-23.

### III.   DISCUSSION

Plaintiff claims that the ALJ committed reversible legal error in finding that Plaintiff's allegations of fatigue have limited credibility and were not reasonably supported by the findings of the objective medical evidence or the reasonable inferences therefrom. Plaintiff argues that the ALJ's analysis of his complaints of fatigue were legally erroneous in that such analysis did not

comply with the standards set forth in SSR 96-7p. Plaintiff argues that he was harmed by this error and asks that the court remand this matter for a new hearing before the ALJ. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The record demonstrates that the ALJ found that Plaintiff had objectively identifiable, medically determinable impairments that could reasonably be expected to produce the pain and other subjective complaints expressed. Tr. 21. The ALJ indicated that he considered Plaintiff's subjective allegations of pain, other complaints, and the functional limitations imposed therefrom in accordance with 20 C.F.R. §§ 404.1529 and 416.929 and SSR 96-7p and found them not entirely supported by the findings of the objective medical evidence. *Id*. The ALJ ultimately found that Plaintiff's subjective allegations had limited credibility. *Id*. Plaintiff takes issue with the grounds recited by the ALJ in his credibility finding.

First, Plaintiff argues that the ALJ erred in evaluating his complaints of fatigue. He argues that the findings upon the orthopedist's physical exam are not relevant to his complaints of fatigue.

The ALJ discussed these findings in the context of his credibility finding, wherein he weighed the evidence with regard to Plaintiff's subjective allegations of pain and other complaints and regarding the limitations imposed by his impairments. SSR 96-7p notes that in making the credibility determination, the ALJ may consider "the medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work." The ALJ is instructed to consider the entire record. *Id*. Plaintiff's argument that the ALJ erred by considering the findings of the orthopedist upon examination is without merit.

Plaintiff next argues that the ALJ failed to consider the possibility that one of Plaintiff's medications, Gleevec, was contributing to his fatigue. However, the ALJ noted in his opinion that Gleevec is an experimental drug "which causes fatigue" and also noted that in December 2002, after Plaintiff began his Gleevec therapy, Dr. Jason Wischmeyer noted that he was doing well despite ongoing fatigue, malaise, and dyspnea on exertion. Tr. 20-21. The record demonstrates that the ALJ considered the side effects of his Gleevec therapy, considered the medical evidence indicating that this medication can cause fatigue, and noted that Plaintiff, in fact, experienced fatigue.

In his opinion the ALJ specifically noted Plaintiff's complaints of fatigue, from April 2001, prior to his alleged onset date. Plaintiff argues that the ALJ erred in considering the results of the exercise test in March 2001, well before the alleged onset date. However, the results of this test are clearly relevant to the ALJ's discussion of Plaintiff's complaints of fatigue since April 2001. SSR 96-7P specifically notes that "[i]mportant information about symptoms recorded by medical sources and reported in the medical evidence may include the onset, description of the character and location

of the symptoms, precipitating and aggravating factors, frequency and duration, course over time (e.g., whether worsening, improving, or static), and daily activities."

It is important to note that the ALJ did not find that Plaintiff did not experience fatigue. The ALJ found that Plaintiff was, in fact, limited, although he was not disabled. Tr. 22. He noted that Plaintiff continued to have symptoms, despite medication, and remained limited since the alleged onset date. *Id*. He specifically found that Plaintiff's impairments have resulted in pain and functional loss. *Id*. He did not find that Plaintiff's allegations of fatigue and pain were completely not credible. Rather, the ALJ found that Plaintiff's allegation, insofar as he alleged that he was unable to perform any work activity, was not entirely credible. Tr. 22. The ALJ correctly noted that even moderate levels of pain and functional loss are not, in and of themselves, incompatible with the ability to perform work activity at some levels of exertion. *Id*. It is within the discretion of the ALJ to determine the disabling nature of pain. *Jones v. Heckler*, 702 F.2d 616, 621-22 (5th Cir. 1983)(internal citation omitted). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(internal citations omitted).

Plaintiff argues that the ALJ erred in making his credibility finding by noting that "there is no current indication of treatment plan to replace the aortic valve, despite the claimant's testimony otherwise." *See* Tr. 22. The ALJ specifically indicated in his opinion that Plaintiff "may face aortic valve replace in the future if his condition deteriorates." Tr. 20. He also indicated that he had considered, but did not accept, Dr. Hirsch's opinion that Plaintiff was disabled, in which he indicated that "his valvular heart disease may eventually lead to valvular heart replacement with its concomitant risk and complications." Tr. 412. Plaintiff testified that he had been told by "several heart doctors" that he "will have a heart transplant." Tr. 51. Upon further questioning Plaintiff testified that Dr. Wischmeyer told him that a valve replacement was "imminent." Tr. 55. Plaintiff

was asked if Dr. Wischmeyer told him it was "going to have to occur in the very near future" or was he told it was a possibility, and Plaintiff said he was told it would occur in the "fairly near future," not in ten, or five, or three years. *Id*.

As Plaintiff notes, the Dr. Wischmeyer indicated in his report of December 18, 2001, that as in most patients with bicupid aortic valve disease, "surgery may ultimately be required, " and advised Plaintiff that he needs to be followed longitudinally to insure that his provider is aware of any progress of his aortic regurgitation or aortic stenosis. Tr. 197. Plaintiff argues that he "perceive[d] no contradiction between his testimony and Dr. Wischmeyer's report." Pl. Br. at 24. Plaintiff also notes that less than eight months after the hearing, he did undergo aortic valve replacement, which should have prompted the Appeals Council to vacate the ALJ decision and order a new hearing.[1] In his opinion the ALJ simply noted that at the time of his decision, there was no current treatment plan to replace his aortic valve, comparing Plaintiff's testimony with the evidence of record. The ALJ appropriately considered the consistency of the Plaintiff's statements with other information in the case record. *See* SSR 96-7p (noting that "[o]ne strong indication of the credibility of an individuals statements is their consistency, both internally and with other information in the case record)." The ALJ did not err in considering such consistency with regard to any treatment plan for aortic valve replacement nor did he err in comparing Plaintiff's testimony with other evidence in the record on that issue.

---

[1] Plaintiff mentions this issue only in passing and his allegations of error deal with the ALJ's credibility finding, rather than any failure by the Appeals Council to consider the evidence of the subsequent valve replacement. The court notes that the subsequent medical evidence related to Plaintiff's aortic impairment is relevant insofar as it may bear upon the severity of the Plaintiff's condition during the time period in question. *Ivy v. Sullivan,* 898 F.2d 1045, 1049 (5th Cir. 1990). However, the evidence submitted may involve a subsequent deterioration of Plaintiff's condition. *See generally, Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir.1994); *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). In any case, that issue is not properly before the court.

Plaintiff further argues that the ALJ erred in finding that Plaintiff's polycythemia "has been stable and well controlled." *See* Tr. 22. He points as evidence to various notations in the record, indicating that on September 23, 2002, Dr. Hirsch found "extreme plethora of the face and neck" and a palpable spleen; a subsequent diagnosis of absolute polycythemia; the commencement of Plaintiff's Gleevec therapy; and Dr. Hirsch's March 13, 2003, finding of much more plethora and increased hemoglobin. Def. Br. at 14, 16.

Dr. Hirsch's progress note dated November 13, 2001, indicates his impression that Plaintiff's polycythemia was controlled. Tr. 483. On March 21, 2002, he noted that Plaintiff's polycythemia was "stable." Tr. 481. Dr. Hirsch noted on November 13, 2002, that Plaintiff had felt much better, was not having the headache all the time, and did not feel like he is going to pass out like he used to. Tr. 478. On December 11, 2002, Dr. Hirsch indicated that Plaintiff had no further headaches or facial swelling, his night sweats were improved, and he otherwise felt fine. Tr. 476. Dr. Hirsch's impression was "polycythemia vera under good control currently continuing on Gleevac therapy daily." *Id*. Dr. Hirsch again noted that Plaintiff's polycythemia was under good control on February 13, 2003. Tr. 474. A progress note dated March 13, 2003, indicates Plaintiff's increased hemoglobin while on Gleevec and his increased headaches. Tr. 472. He indicated that Plaintiff should do a unit phlebotomy to see if that helps his headaches but continue the Gleevec. Tr. 471.

In his opinion the ALJ noted that Plaintiff's polycythemia was controlled with phlebotomies until approximately September 2002, when he began treatment with Gleevac. Tr. 19. He also noted that, overall, Plaintiff's polycythemia has been stable and well-controlled. Tr. 22. Despite the notations in the record to which Plaintiff points, Dr. Hirsch, Plaintiff's treating opinion, nevertheless opined on numerous occasions that Plaintiff's polycythemia was stable and well-controlled. Tr. 474, 476, 478, 481, 483.

I find that the ALJ properly exercised his responsibility as factfinder in weighing the evidence. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). I further find that the ALJ did not pick and choose among the evidence and consider only that which supported his position, as alleged by the Plaintiff. Rather, he appropriately considered and discussed the evidence as a whole. Questions of credibility are the responsibility of the ALJ to resolve. *Masterson*, 309 F.3d at 272. The subjective testimony of Plaintiff and his witness must be weighed against the objective evidence of medical diagnosis. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)(citing *Jones*, 702 F.2d at 621 n.4). Subjective evidence need not take precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)(citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir 1988)). Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Villa*, 895 F.2d at 1024 (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The record demonstrates that the ALJ complied with the requirements of SSR 96-7p in assessing Plaintiff's pain and in making his credibility determination. Moreover, the record demonstrates that the ALJ appropriately discussed the reasons underlying the credibility determination, including the inconsistency between Plaintiff's testimony and allegations and the medical evidence. The ALJ's credibility determination was not legally insufficient, and it was supported by substantial evidence. I find that the ALJ did not commit legal error and find no basis for a reversal and remand of the ALJ's decision.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections on or before **3:00 p.m. on March 30, 2006**. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation on or before **3:00 p.m. on March 30, 2006,** shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 16th day of March, 2006.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**